The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

John CAMPBELL, Defendant-Appellant.

No. 81CA0875.

Colorado Court of Appeals, Div. III.

Oct. 13, 1983.

Rehearing Denied Dec. 15, 1983.

Certiorari Denied April 2, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sp. Asst. Atty. Gen., Marie Volk Bahr, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David Vela, State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellant.

BABCOCK, Judge.

The defendant, John Campbell, appeals the judgments of conviction entered upon jury verdicts finding him guilty of second degree burglary and theft (trial 1), two counts of second degree burglary and one count of third degree burglary (trial 2), and two counts of first degree criminal trespass, one count of theft and one count of criminal mischief (trial 3). These charges were separately stated in one information but severed for trial. We affirm the judgments of conviction.

On February 1, 1981, at about 6:25 a.m., an officer of the Glenwood Springs police department was patrolling a motel district of that city. He saw a man walking on a small staircase at the southwest corner of the Antlers Motel. When the man saw the patrol car he ran from the building. The officer noticed a broken window at the side of the building near where the man had been and saw that a screen had been removed.

The officer followed the man's tracks in the fresh-fallen snow to a place where he saw a pants leg and signs that the man had hidden himself in a depression by covering himself with snow. When the man stood, the officer recognized him as the person who had run from the building. The man was then arrested. The officer found in the man's possession $648 in cash, a cigarette lighter, a key to the "Restwell Motel," and a razor blade scraper. The man had no identification and would not identify himself to the officer.

The officer contacted the manager of the Restwell Motel and described the man to the manager. The manager identified him as John Campbell, defendant, who had been living in room 11 with his wife and brother-in-law since mid-November 1980. The manager informed the officer that the defendant was employed at the local Pizza Hut and that the defendant's wife was employed at the local Kentucky Fried Chicken. The manager also told the officer that she had read about recent burglaries at these establishments and was suspicious of the people in room 11 because they would not allow the room to be cleaned by a maid, would not permit the manager to enter the room, and insisted upon obtaining clean linen and towels themselves.

The night manager at the Antlers Motel later told the officer that he observed the defendant's arrest and recognized him as a person who came to the motel office from time to time to purchase candy. From conversations with the defendant, he knew the defendant lived at the Restwell Motel.

The Glenwood Springs police officers reviewed their records and determined that on January 16, 1981, burglaries were committed at the Pizza Hut, Kentucky Fried Chicken, and the home of a Mrs. Clemons. The two restaurants were located in the same block and Mrs. Clemons' home was located across the alley from one of them; all three were within three blocks from the Restwell Motel. The officers then reviewed fifteen criminal complaints concerning thefts and burglaries from various vehicles and motels which had occurred within a four block radius of the Restwell Motel since mid-November 1980.

This information was compiled into an affidavit for a warrant to search the "Restwell Motel, Unit # 11, 171 West Sixth

Street, Glenwood Springs, County of Garfield, State of Colorado." The affidavit made reference to the attached reports of the "fifteen thefts from various vehicles and motels beginning November 16, 1980, within four blocks of the Restwell Motel." In addition, an exhibit attached to the affidavit was a compilation of the stolen property extracted from the attached criminal complaint reports.

At the suppression hearing, the affiant testified that he watched the issuing judge read each page of the affidavit including the exhibit and the attached complaint reports and that he subscribed and swore to the substance of the affidavit before the issuing judge on February 1, 1981.

The requested warrant was issued, and the officers executed it that same day. During the search, the officers found and seized a Sharp portable 16-inch color television, a video cassette recorder, a Canon XLS–100 movie camera, and a Canon BM70 boom microphone. These items of property were listed on the exhibit attached to the affidavit and correspond to property described in an attached complaint report as having been stolen on January 1, 1981, from Edward Jacobsen's motor home which was parked in the Antlers Motel parking lot. None of the other items of property described in the exhibit were found during the search.

Additional items of personal property including a .44 caliber old model army revolver and a camera and camera equipment were found. The officer in charge recognized these items as having been taken from the home of Richard Roth during a burglary in November 1980. He also found a Sony television which he recognized as an item of property taken on January 1, 1981, from the motor home of Russell Costello which had been parked adjacent to Mr. Jacobsen's motor home in the Antlers Motel parking lot. Neither the complaint report of the Roth burglary nor the complaint report of theft from the Costello motor home was attached to the affidavit, nor were these items of property described in the attached exhibit. The officers seized these items of personal property.

After the search was completed, the officers questioned the defendant. The defendant made incriminating statements concerning his involvement in the Roth burglary, the burglaries of the two restaurants, the theft of property from the Jacobsen motor home, and the entry into the Costello motor home.

The defendant's motion to suppress the property and statements was denied by the trial court. At trial 1, the pistol and the camera and camera equipment together with the defendant's statement; at trial 2, defendant's statement; and at trial 3, the property taken from the Costello and Jacobsen motor homes together with defendant's statement were admitted into evidence.

I.

On appeal, defendant argues that the affidavit for search warrant is deficient because it fails to set forth probable cause. Specifically, defendant argues that there is an insufficient showing of nexus between criminal activity, the property to be seized, and the place to be searched. He further asserts that his statements to the police are tainted as the fruit of an illegal search and seizure. We disagree.

In a search pursuant to a warrant, the constitutional standard of probable cause requires that the affidavit allege sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located on the premises to be searched. *People v. Hearty*, 644 P.2d 302 (Colo.1982); *People v. Ball*, 639 P.2d 1078 (Colo.1982). In determining whether this constitutional standard has been met, the affidavit must be interpreted "in a common sense and realistic fashion" and courts should not impose "technical requirements of elaborate specificity." *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *People v. Hearty, supra*. Probable cause concerns a level of knowledge

grounded in the practical considerations of everyday life on which reasonable and prudent persons act, *People v. Ball, supra,* and it is measured by "reasonableness," not by pure mathematical probability. *People v. Hearty, supra.* "And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... conclud[ing] that probable cause existed." *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ Given the importance of obtaining a search warrant, a search under a warrant may be sustained where one without it may fail. *United States v. Ventresca, supra.* To encourage the police to follow the warrant procedure, the reviewing judge should accept evidence of a less persuasive character than that which would justify a search by a police officer acting without a warrant. *People v. Lindholm,* 197 Colo. 270, 591 P.2d 1032 (1979); *see also Illinois v. Gates, supra.*

■ The determination of probable cause must be made by the reviewing judge on the basis of information contained within the four corners of the affidavit. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *People v. Padilla,* 182 Colo. 101, 511 P.2d 480 (1973). However, documents attached to and incorporated in an affidavit by reference need not be sworn to separately and may thus fall within the four corners of the affidavit. *People v. Sloss,* 34 Cal.App.3d 74, 109 Cal. Rptr. 583 (1973); *Heard v. State,* 272 Ark. 140, 612 S.W.2d 312 (1981); *State v. Lozano,* 209 Neb. 772, 311 N.W.2d 529 (1981); *see 2 W. LaFave, Search & Seizure* § 4.3(d) (1978). In this event, however, it is important that the record reflect, as it does here, that the issuing judge had before him all attached documents in making his determination of probable cause to issue the warrant. *See State v. Stone,* 322 A.2d 314 (Me.1974); *2 W. LaFave, Search & Seizure* § 4.3(d) (1978).

### A.

■ When measured by these standards, our reading of the affidavit leads us to conclude that it established probable cause to believe that stolen property which would be material evidence in a subsequent prosecution would be found in the specified motel room. When the items described in the exhibit attached to the affidavit are compared with the complaint reports, also attached to the affidavit, it is clear that a nexus exists between criminal activity and the things to be seized. *See 1 W. LaFave, Search & Seizure,* § 3.7(d) (1978).

### B.

■ More difficult is the determination of whether the affidavit is sufficient to establish a nexus between the things to be seized and the place to be searched. This nexus can be established by reasonable inferences which may flow from the information contained in the affidavit. *United States v. Lucarz,* 430 F.2d 1051 (9th Cir. 1970); *see Illinois v. Gates, supra; People v. Fike,* 189 Colo. 238, 539 P.2d 125 (1975); *1 W. LaFave, Search & Seizure* § 3.7(d) (1978).

■ Here, the affidavit recites sufficient facts to establish a nexus between the things to be seized and the place to be searched. First, a reasonable inference that the defendant was attempting to burglarize the Antlers Motel immediately prior to his arrest arises from his flight and concealment from the officer, the missing window screen, and the broken window. This inference, coupled with (1) the criminal complaint reports reflecting 15 other thefts and burglaries committed within a 10-week period, in a similar manner, and within 4 blocks of defendant's motel, (2) the employment of defendant and his wife at two of the establishments which had been burglarized, and (3) the motel manager's statement that the occupants of defendant's room refused to permit access to the room by motel personnel, give rise to a reasonable belief that the defendant, his wife, and his brother-in-law were secreting stolen property in the motel room. Therefore, our review of the affidavit, together with its attachments, when read in a common sense

fashion and measured by the standard of reasonableness, leads us to conclude that the issuing judge had a substantial basis for concluding that probable cause existed to search defendant's motel room.

## C.

■ As to the items seized by the officers and admitted at trials 1 and 3 which were not described in the warrant, we hold that their seizure falls within the plain view exception to the warrant requirement. *People v. Stoppel*, 637 P.2d 384 (Colo.1981); *People v. Franklin*, 640 P.2d 226 (Colo. 1982). Because the warrant was valid, there was a valid intrusion. The discovery of these items came during the course of the officers' search for the items described in the exhibit attached to the affidavit in places where these items might reasonably be expected to be found. Their discovery was therefore inadvertent. Finally, the officer who seized these items had present knowledge of facts which established a reasonable nexus between the articles seized and their theft.

Because we hold that there was no search or seizure in violation of the defendant's federal or Colorado constitutional rights, we need not address his contention that his incriminating statements were the product of an unlawful search and seizure.

## II.

Defendant also contends that the trial court erred in trials 1 and 3 by failing to submit to the juries his tendered instructions on theft of goods valued between $50 and $200, a lesser included offense of theft of goods valued between $200 and $10,000. We disagree.

■ Where there is evidence tending to establish the commission of a lesser offense, an instruction on the lesser offense should be submitted to the jury upon the defendant's request. *Beaudoin v. People*, 627 P.2d 739 (Colo.1981). But, there must be a rational basis for acquittal on the offense charged and conviction on the included offense, § 18–1–408(6), C.R.S.1973

(1978 Repl.Vol. 8), and the mere chance of the jury's rejection of uncontroverted testimony and conviction on the lesser charge does not necessitate an instruction on the lesser charge. *People v. Clay*, 644 P.2d 81 (Colo.App.1982).

Here, in both trials, testimony of the owners of the stolen goods established a total value at the time of the taking well in excess of $200, and no evidence was admitted showing that value to be less than $200.

■ Accordingly, we conclude that the mere chance of the juries' rejection of the uncontroverted testimony of value and conviction on a lesser charge did not warrant an instruction on theft of goods valued between $50 and $200 in trial 1 or in trial 3.

## III.

Defendant next contends that the jury instructions and verdict forms for trials 1 and 3 were insufficient in that they did not specify the victim of each offense charged. Again we disagree.

First, we note that during trial 1, defendant neither objected to the instructions or the verdict forms on this particular ground, nor did he specify this as error in his motion for new trial. During trial 3 defendant objected to the instructions regarding criminal mischief and theft, but he did not raise as error in his motion for new trial the failure to specify the victim in these instructions or verdict forms.

■ Where specific objections to the trial court's rulings have not been set forth with particularity in the motion for new trial, those rulings cannot be considered on review unless they constitute plain error. Crim.P. 30; Crim.P. 33; Crim.P. 52(b); *People v. Barker*, 180 Colo. 28, 501 P.2d 1041 (1972); *People v. Brionez*, 39 Colo.App. 396, 570 P.2d 1296 (1977). To rise to the level of plain error, "the error must 'seriously affect the substantial rights of the accused' ... and the record must disclose 'a reasonable possibility that the improper instruction contributed to the defendant's

conviction ....'" *People v. Brionez, supra.*

■ In trial 1 there was only one victim. Thus, the failure to identify him in the instructions and verdict forms could not have resulted in any confusion in the minds of the jurors affecting the defendant's substantial rights or contributing to his conviction. Therefore, there was no plain error.

■ In trial 3, the information charged defendant with one count of criminal trespass against the property of Costello and one count each of criminal trespass, criminal mischief, and theft against the property of Jacobsen. This information was read to the jurors. The instructions and verdict forms regarding the criminal trespass charges specified the names of the victims; the instructions and verdict forms regarding criminal mischief and theft did not. Considering the instructions as a whole, we conclude that the jury was adequately apprised of the offenses charged and the victims of each. Although the instructions and verdict forms would have been more explicit had the victims' names been inserted in each, defendant's arguments and claims of prejudicial error are illusory and do not mandate reversal on the basis of plain error. *People v. Frysig,* 628 P.2d 1004 (Colo.1981).

Judgment affirmed.

STERNBERG, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

I disagree with the majority's conclusion that there is a reasonable nexus based on the allegations in the affidavit between the items to be seized and the defendant's premises.

It is fundamental under our constitution that in order to support the issuance of a search warrant, the issuing magistrate must be apprised of sufficient underlying facts and circumstances reduced to writing under oath from which he may reasonably

conclude that probable cause exists for the issuance of the warrant. *Colo. Const.* Art. II, Sec. 7; *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971). An affidavit in support of a search warrant must contain facts which would support the belief of a reasonably prudent person that the items to be seized are located at the place to be searched. *People v. White,* 632 P.2d 609 (Colo.App.1981). The affidavit must establish probable cause to believe that the items sought are located at the premises to be searched. Crim.P. 41(c)(IV). The determination of probable cause must be made by the reviewing judge based solely on the information contained within the four corners of the affidavit. *People v. Padilla,* 182 Colo. 101, 511 P.2d 480 (1973).

The affidavit submitted to the reviewing court stated that the Pizza Hut and Kentucky Fried Chicken Restaurants had been burglarized, but did not identify what, if any, items had been taken.

The affidavit did establish that the Pizza Hut and Kentucky Fried Chicken burglaries were perpetrated in a manner similar to the Antlers Motel burglary; that the three establishments were located within a two block area, that the burglaries were committed between 3:00 a.m. and 6:30 a.m., and that entry was gained in each by breaking a window.

However, the items for which the search warrant was issued were not associated with the burglaries of the Pizza Hut, Kentucky Fried Chicken, or the Antlers Motel. Rather, these items were abstracted from the several criminal complaints attached to the affidavit. None of the complaints involved crimes committed between the hours of 3:00 a.m. and 6:30 a.m. One complaint involved a pickpocketing incident which occurred in a hotel bar at approximately 1:00 a.m. Another concerned the taking of a wallet from a clothes basket at the laundry room of the same hotel at 2:50 p.m. Still another was premised upon the taking of a purse at 6:45 p.m. The affidavit is barren of evidence establishing probable cause to believe that a nexus existed

between the items sought to be seized and the defendant's motel room.

Other than the fact that the defendant was in the neighborhood during the time that the other crimes reported were committed, there is nothing to establish probable cause to believe that he had committed all of the thefts and burglaries in the area during that period and taken the illicit proceeds to his motel room. Further, there is no allegation that these crimes, as reported, were different in any way from crimes committed in the area when defendant was not present.

Under these circumstances, I find that the affidavit fails to meet a constitutional standard of probable cause. *See People v. Hearty,* 644 P.2d 302 (Colo.1982). As such, the search warrant constitutes a general warrant in violation of the United States and Colorado Constitutions. *See Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). *People v. Clavey,* 187 Colo. 305, 530 P.2d 491 (1975).

The search warrant being defective, the search was illegal and the items seized should be excluded. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *People v. Phillips,* 197 Colo. 546, 594 P.2d 1053 (1979). All fruits of the illegal search should be excluded as well. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Hines,* 195 Colo. 71, 575 P.2d 414 (1978).

The admission of the evidence obtained as a result of the illegal search of the defendant's premises violated the defendant's constitutional rights. I would reverse the defendant's convictions and remand for new trial. On retrial a determination of whether the confessions were so tainted as to require their suppression as derivative of the illegal search must be made.