The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

James William HIGBEE, Defendant–Appellee.

No. 89SA257.

Supreme Court of Colorado, En Banc.

Dec. 24, 1990.

John Suthers, Dist. Atty., Brett Barkey and David A. Gilbert, Deputy Dist. Attys., Colorado Springs, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Shaun C. Kaufman, Deputy State Public Defender, Colorado Springs, for defendant-appellee.

Justice LOHR delivered the Opinion of the Court.

The prosecution filed an interlocutory appeal pursuant to C.A.R. 4.1 challenging an order of the El Paso County District Court suppressing physical evidence seized during a search of the defendant's apartment. The district court concluded that the warrantless search was not justified by exigent circumstances, and ordered the suppression of all fruits of the search. We determined that the findings of the district court were not sufficient to permit us to evaluate the propriety of the suppression order. We therefore remanded the case for the purpose of a new hearing on the motion to suppress[1] and requested specific factual findings and legal conclusions on the issues of probable cause and exigent circumstances. On remand the district court held an evidentiary hearing and again granted the motion to suppress. The court concluded that police officers lacked both probable cause and exigent circumstances to enter the defendant's apartment. We reverse the district court's suppression order and remand the case for further proceedings.

I.

We derive the following description of the relevant events from the findings of the district court, supplemented by uncontroverted evidence in the record.[2] On the

---

1. A new hearing was required because the judge who presided over the first hearing had left the bench.

2. At the close of the second hearing, the prosecution requested that the judge incorporate the transcript from the first hearing to cover facts not developed at the second hearing. Upon inquiry by the court, the defendant's counsel stated that he had no objection. We therefore consider the transcript of the first hearing as part of the record. During the first hearing, the judge incorporated the record from an earlier hearing held to consider a motion to suppress

evening of January 19, 1989, a confidential informant working with the Colorado Springs Police Department purchased a small quantity of alleged narcotics from the defendant. The purchase took place in the defendant's car in the parking lot of a supermarket and was observed by police officers stationed nearby. After the purchase, the defendant evaded surveillance by the officers.

The informant reported to a police officer immediately after buying the alleged narcotics. She stated that she had seen an extra toggle switch on the dashboard of the defendant's car and wires attached to two red tubes by electrical tape. The defendant allegedly told the informant that the tubes were dynamite and that the toggle switch could be used to arm the explosive, which would then detonate if anyone tampered with the car. In addition, the defendant allegedly explained that he could set the explosive with a thirty-second delay so that he could trigger it, then escape, prior to the explosion. The confidential informant had worked with the police department on previous occasions, and the information provided by the informant on those occasions had been verified.

Subsequent to the "buy," an officer of the Colorado Springs Police Department obtained an arrest warrant for the defendant. Police officers located the defendant's car outside an apartment complex in Colorado Springs about 4:00 p.m. on January 20, approximately eighteen to nineteen hours after the "buy." The officers observed the defendant and others carrying packages from the defendant's car to the apartment complex. The persons assisting the defendant left in a van before the officers approached the defendant.

Shortly after the defendant was located, police officers notified the head of the police department bomb squad and told him of the information provided by the informant. Before the bomb squad arrived, officers arrested the defendant, handcuffed him, and placed him in the back seat of a police car. Pursuant to the bomb squad officer's instructions, the officers evacuated approximately five families from the apartment complex and two adjacent complexes within a 300 foot radius [3] and secured that area from further entry by civilians.

Upon arrival at the scene, the officer in charge of the bomb squad looked inside the defendant's car and observed an extra toggle switch on the dashboard. He asked the defendant about the switch and was told that it was used to bypass a short-circuit. The officer entered the car, traced the wires from the switch, determined that they functioned as a bypass of a short circuit in the ignition system as the defendant had claimed, and further determined that there were no explosives in the car. The officer questioned the defendant about the confidential informant's report concerning the dynamite and the defendant's statements about explosives. The defendant denied that there had been dynamite in the car or that he had made the statements attributed to him by the confidential informant.

The bomb squad officer, concerned that explosives had been moved to the apartment and might be rigged to a booby trap or timing device,[4] led a search of the apartment. The defendant was in custody at this time. The explosive device described by the informant was not found. However, the police officers did locate a military

---

filed by co-defendant Jennifer Arbagy. The record on remand, however, contains no suggestion that the judge who presided at the second evidentiary hearing on the defendant's motion reviewed the record in the Arbagy proceeding, and we do not deem it to be part of the record now before us.

**3.** We infer that the car was the center point from which the area to be evacuated was measured, but the record is not definitive on this point.

**4.** The prosecutor asked the leader of the bomb squad on direct examination whether the discovery of the toggle switch hooked up to the ignition system in the defendant's car confirmed or disaffirmed the information from the narcotics officers that "there may have been an explosive in the vehicle." The officer answered, "I was concerned as to whether the toggle switch that we found in the car was the same toggle switch that they were talking about."

hand grenade simulator[5] and controlled substances. Those items were later seized by police officers.

The district attorney filed an Information in El Paso County District Court, charging the defendant with a number of narcotics offenses and other crimes, based in part on items discovered during the search of the apartment. The defendant moved to suppress all fruits of the search of his apartment. The defendant argued that the police officers lacked probable cause to search his apartment and that there were no exigent circumstances to justify the warrantless search.

The district court in the first hearing concluded that the warrantless search was not justified by exigent circumstances and ordered suppression of all fruits of the search. The court based this ruling on the facts that the defendant's car had been secured, the defendant had not been in the apartment for at least one-half hour, and the defendant and his roommate[6] were in custody. On remand the district court in the second hearing again granted the defendant's motion to suppress the fruits of the warrantless search.

## II.

The propriety of the district court's suppression order depends on the legitimacy of the conduct of the police officers in entering and searching the defendant's apartment without a warrant. The district court held that the officers lacked probable cause to believe explosives were located in the apartment, and that the prosecution failed to prove the existence of exigent circumstances. We conclude that the district court's findings of fact do not support its conclusions that probable cause and exigent circumstances to support the warrantless search were lacking.

The fourth amendment to the United States Constitution and article II, section 7, of the Colorado Constitution proscribe all unreasonable searches and seizures. Under these provisions a warrantless search is invalid unless it is supported by probable cause and is justified under one of the narrowly defined exceptions to the warrant requirement. *People v. Garcia*, 752 P.2d 570, 581 (Colo.1988); *People v. Clements*, 661 P.2d 267, 270–71 (Colo.1983). Among the exceptions that give rise to a reasonable search despite the absence of a warrant is the existence of exigent circumstances. *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Garcia*, 752 P.2d at 581; *People v. Malczewski*, 744 P.2d 62, 66 (Colo.1987); *Clements*, 661 P.2d at 271. We have limited application of the exigent circumstances exception to "those situations involving a bona fide pursuit of a fleeing suspect, the risk of immediate destruction of evidence, or a colorable claim of emergency threatening the life or safety of another." *Malczewski*, 744 P.2d at 66; *accord McCall v. People*, 623 P.2d 397, 402 (Colo.1981). Thus, to support admission of evidence seized as the fruit of the warrantless search of the defendant's apartment, the burden was on the prosecution to prove (1) there was probable cause to believe an explosive device was located in the defendant's apartment, and (2) the presence of the device gave rise to exigent circumstances that justified the warrantless search.

### A.

The constitutional standard of probable cause serves to safeguard against "unreasonable interferences with privacy" while allowing "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); *accord People v. Ratcliff*, 778 P.2d 1371, 1375 (Colo.1989); *People v. Melgosa*, 753 P.2d 221, 225 (Colo.1988). Probable cause is a flexible standard deriving its content from a common sense concept of reasonableness. *Ratcliff*, 778 P.2d at 1375; *Melgosa*, 753

5. A hand grenade simulator is an explosive device used to teach soldiers the correct procedure for throwing hand grenades.

6. The roommate was Jennifer Arbagy. The information concerning her was presented at a hearing on her own motion to suppress evidence. The record of that hearing is not part of the record before us. See n. 2, above.

P.2d at 225. "In the case of a search, probable cause means reasonable grounds to believe that [the item sought] is located in the area to be searched." *Melgosa*, 753 P.2d at 225; *accord People v. Hearty*, 644 P.2d 302, 309–10 (Colo.1982); *People v. Ball*, 639 P.2d 1078, 1082 (Colo.1982). In assessing the existence of probable cause to support action taken without a warrant, we must consider "the police officer's knowledge, expertise, and experience in a particular law enforcement field." *People v. Rueda*, 649 P.2d 1106, 1109 (Colo.1982); *accord, e.g., Melgosa*, 753 P.2d at 225; *Ball*, 639 P.2d at 1082. To determine the reasonableness of the police officers' actions in reliance on information provided by an informant, we consider the totality of the circumstances, taking into account, among other things, the veracity of the informant as well as the informant's basis of knowledge. *People v. Pannebaker*, 714 P.2d 904, 907 (Colo.1986).[7] Evidence verifying the informant's tip is of particular importance. *Pannebaker*, 714 P.2d at 907.

▪ The district court found that a confidential informant, proven to be reliable in the past, reported seeing red tubes attached to wires in the defendant's car and that the defendant told the informant that this was dynamite that could be armed or detonated by a toggle switch on the dashboard. The court found that the informant obtained this information during a controlled buy of narcotics in the defendant's vehicle. The buy took place under surveillance by police officers, providing independent corroboration that the informant had the opportunity to observe the interior of the defendant's car. The officer who initiated the search of both the car and the apartment verified the presence of an extra toggle switch on the dashboard when he looked into the vehicle. That officer also testified that, based on his experience, explosives or booby traps are often used in drug-related situations. The officer had specific training in techniques to neutralize an explosive device and in evaluation of the veracity of a claim that such a device exists.[8]

Under the totality of the circumstances test the police officers had probable cause to believe that dynamite was present in the defendant's car.[9] The question remains whether failure to locate explosives in the car gave rise to probable cause that explosives were present in the defendant's apartment. We hold that it did.

▪ In determining whether probable cause existed to believe that explosives had been moved from the car to the apartment we must again apply the standard of "reasonableness." *See, Ratcliff*, 778 P.2d at 1375; *Melgosa*, 753 P.2d at 225. The district court held that mere movement between the car and the apartment did not give rise to probable cause that the explosives had been transferred to the apartment. The record indicates, however, that during the half-hour prior to the defendant's arrest, police officers observed the defendant and others carrying items from the car into the apartment complex, apparently in the process of moving into one of the apartments. Thus, when the search of the car by police officers disclosed no explosive device, even though there was probable cause to believe that such a device had been located in the car, it gave rise to more than mere suspicion that the device had been moved to the apartment. Association of the defendant with the apartment combined with the observation of items being carried from the car to the apartment led to the reasonable conclusion that the alleged explosive device had been moved to the apartment.

---

7. In 1983 the United States Supreme Court articulated the "totality of the circumstances" test to determine if probable cause to believe "that contraband or evidence of a crime will be found in a particular place" exists on the basis of an informant's tip. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In 1986 we adopted the *Gates* "totality of the circumstances" test for probable cause in the case of an informant for purposes of article II, section 7, of the Colorado Constitution. *Pannebaker*, 714 P.2d at 907.

8. The officer testified as to the importance of such training to avoid the need to respond to every bomb threat.

9. No issue is before us concerning the warrantless search of the car.

## B.

■ Probable cause alone will not justify a warrantless search of the defendant's apartment. "A warrantless search and seizure is presumptively illegal, and the prosecution has the burden of establishing an exception to the warrant requirement." *People v. Amato,* 193 Colo. 57, 59, 562 P.2d 422, 423 (1977); *accord Mincey v. Arizona,* 437 U.S. 385, 390–91, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *Garcia,* 752 P.2d at 581; *People v. Hogan,* 649 P.2d 326, 331 (Colo.1982); *McCall,* 623 P.2d at 402. The prosecution argues that probable cause to believe an explosive device was located in the apartment created an emergency that justified immediate police action. We have stated that "[t]he exigent circumstances doctrine runs counter to Fourth Amendment guarantees and, for this reason, the scope of the exception must be strictly circumscribed by the exigencies which justify its initiation." *Hogan,* 649 P.2d at 331; *accord Mincey,* 437 U.S. at 393, 98 S.Ct. at 2413. Thus, "[t]he emergency variant of the exigent circumstances exception requires a showing of an immediate crisis inside the [place to be searched] and the probability that police assistance will be helpful in alleviating that crisis." *Malczewski,* 744 P.2d at 66; *accord People v. Thompson,* 770 P.2d 1282, 1285 (Colo.1989). We have established as the standard for determining the existence of an immediate crisis that at the time of the search, information known to the police gave rise to "a colorable claim of emergency threatening the life or safety of another." *Malczewski,* 744 P.2d at 66; *accord Thompson,* 770 P.2d at 1285; *Hogan,* 649 P.2d at 331. Thus, in this case the prosecution was required to show (1) a colorable claim of threat to life or safety posed by the alleged explosive device; and (2) the threat was so immediate as to require action prior to issuance of a search warrant. "In determining whether the emergency exception has been satisfied, a court must examine the totality of circumstances, including the delay likely to be occasioned by obtaining a

warrant, the character of the investigation, and the potential risk posed to other persons from any unnecessary delay, and must evaluate those circumstances as they would have appeared to a prudent and trained police officer at the time of the challenged entry." *Malczewski,* 744 P.2d at 66.

The district court noted that prior to the search, the officer in charge of the bomb squad considered "that the two sticks of dynamite would have an explosive power of 16,000 feet per second and would be capable of breaking walls, glass and causing a fire." At the time of the search the police officers had evacuated the building and the structures and other areas within the 300 feet radius. The officers, however, had not entered the apartment.

The bomb squad leader testified that two to three hours would be required to obtain a warrant.[10] The object of the officer's concern was an explosive device with great destructive power. Although the critical area had been evacuated and sealed off, the defendant had allegedly represented that the device when in his car was rigged to a thirty-second timer to permit delayed detonation. The leader of the bomb squad testified from a background of considerable experience that the types of timers and booby traps that can be employed in conjunction with dynamite are limited only by the human imagination. Even though the defendant was in custody and no evidence affirmatively indicated that he had set up and triggered a timing device before his arrest, the evidence suggested that the defendant knew how to do so. Although the critical area had been evacuated and sealed off, police officers had not entered the defendant's apartment to verify that it was unoccupied. The bomb squad leader testified that even if the building was empty, the threat of injury to himself and fellow officers upon entering the building to neutralize any explosive device connected to a timer increased with each moment of delay. He also testified to an ever-present risk of

---

**10.** The district court stated, "[t]he testimony was two to three hours; however, that was for a typed warrant and not a rush situation." There

was no evidence that a warrant could have been obtained more promptly.

inadvertent explosion. Five families had been evacuated from their homes on a January evening. Although the record does not suggest that any of these persons were attempting to return or that the officers could not have prevented their return, the possibility that persons might cross the police line undetected during the two to three hour delay in obtaining a warrant cannot be completely discounted.[11] Under these difficult circumstances, suggesting a low risk of explosion but a grave danger to any persons in the vicinity if an explosion should occur, the experienced bomb squad officer concluded that the defendant's apartment should be searched. We believe that an emergency situation justifying the warrantless entry was adequately established under the standards articulated in *Malczewski*.

### III.

We conclude that the prosecution met its burden of establishing that at the time of the search the police had probable cause to believe that the defendant had moved an explosive device into the apartment and that the imminent threat to safety from an explosion justified immediate action. The facts found by the district court do not support its conclusions to the contrary. We reverse the suppression order entered by the trial court and remand the case for further proceedings.

ERICKSON, J., does not participate.

---

**11.** The record does not disclose the number of officers sealing off the area or the procedure that was followed to assure that no persons could obtain access.