### The PEOPLE of the State of Colorado, Petitioner,

v.

### Robert Joseph HAKEL, Respondent.

### No. 93SC103.

Supreme Court of Colorado,
En Banc.

March 14, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Laurie A. Booras, Asst. Atty. Gen., Curt Kriksciun, Sp. Asst. Atty. Gen., Denver, for respondent.

David F. Vela, State Public Defender, April Bennett Stone, F. Brittin Clayton III, Sp. Deputy State Public Defenders, Boulder, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *People v. Hakel,* No. 90CA1966 (Colo. App. Nov. 17, 1992) (not selected for official publication), the court of appeals reversed judgments of conviction on three counts of

possession of cocaine,[1] two counts of distribution of cocaine,[2] two counts of conspiracy to distribute cocaine,[3] possession of cocaine with intent to distribute,[4] possession of more than twenty-eight grams of cocaine with intent to distribute (a sentence enhancer),[5] and being a special offender (a sentence enhancer)[6] entered against the respondent, Robert Joseph Hakel. The court of appeals held that the trial court erred in denying Hakel's motion to suppress evidence seized at his residence pursuant to a search warrant. The court of appeals concluded that the affidavit submitted in support of the request for the issuance of the warrant did not establish probable cause to believe that evidence of the illicit transactions was located at Hakel's residence. Having granted certiorari to review the propriety of the court of appeals' conclusion, we reverse and remand the case with directions to reinstate the judgments of conviction.

I

In the fall of 1989, several officers of the Mesa County Sheriff's Department and the Grand Junction Police Department monitored two controlled purchases of cocaine by a confidential informant. On September 27, 1989, the informant, equipped with a transmitting device, accompanied Zane Garner to the latter's house. When Garner stated that he would contact his source when he received $1,200, the informant gave Garner the money. Garner then made several telephone calls. During one conversation, Garner stated that he wanted to set up a pool game and told the person to whom he was speaking to bring the "Balabusca," a type of pool cue, to the usual place. The record contains evidence that drug traffickers often use code words to arrange transactions.

While the informant waited, Garner left his residence, drove to the parking lot of a nearby Loco Food Store, and entered a green van occupied by Hakel and another person. The three men drove to another store and returned to the Loco Food Store. Garner then returned to his residence and gave the confidential informant a plastic bag containing 24.62 grams of cocaine powder.

On October 11, 1989, the confidential informant again visited Garner's residence to purchase cocaine. Upon receiving $1,200 from the informant, Garner made a telephone call and told the person who answered the call to bring the "Balabusca" to the usual place. Hakel then drove to the Best Value Inn, entered room 271 of the motel, remained there for five to ten minutes, and drove to the Loco Food Store. Garner, who also had driven to the food store, got out of his vehicle, approached the automobile occupied by Hakel, and leaned inside the car. Garner returned to his vehicle, drove back to his residence, and gave the confidential informant a plastic bag containing 25.09 grams of cocaine powder.

On October 12, 1989, police officers obtained a warrant to search room 271 of the Best Value Inn based upon an affidavit executed by Grand Junction Police Department Officer John Zen. The affidavit contained the following statements:

4. On October 11, 1989 Detective Bill Booth ... and Detective Tim Grimsby ... were surveilling 2150 College Place, number 22. Booth and Grimsby both indicated to me that approximately 8:05 p.m. they observed Robert Hakel to leave that residence. ... [and] that they followed Hakel in his vehicle to the Best Value Inn located at 718 Horizon Drive. ... Booth stated that he then observed Robert Hakel to go into room 271 of the Best Value Inn. ... Approximately five minutes later Booth stated that Hakel left room 271. Detective Grimsby told me that he then followed

1. §§ 12–22–310(1)(a)(V), 5 C.R.S. (1989 Supp.) & 18–18–105(1)(a), 8B C.R.S. (1989 Supp.).

2. §§ 12–22–310(1)(a)(V), 5 C.R.S. (1989 Supp.) & 18–18–105(1)(a), 8B C.R.S. (1989 Supp.).

3. §§ 12–22–310(1)(a)(V), 5 C.R.S. (1989 Supp.); 18–2–201, 8B C.R.S. (1986); & 18–18–105(1)(a), 8B C.R.S. (1989 Supp.).

4. §§ 12–22–310(1)(a)(V), 5 C.R.S. (1989 Supp.) & 18–18—105(1)(a), 8B C.R.S. (1989 Supp.).

5. § 18–18–105(3), 8B C.R.S. (1989 Supp.).

6. § 18–18–107, 8B C.R.S. (1986).

Hakel from the Best Value Inn to the Loco Food Store.... Grimsby stated that he observed Hakel to meet with a person who Grimsby knew as Zane Garner. Grimsby stated that Garner walked up to the driver's window of Hakel's car, stayed there for approximately four minutes and then left. Grimsby stated that Hakel also left the area at that time and he followed Hakel back to [his] residence.... Grimsby observed Hakel to go into that residence.

5. In the latter part of 1984, I personally participated in a Federal Bureau of Investigation wiretap investigation in Mesa County, Colorado. Robert Hakel was the target of that wiretap. I know that as a result of that investigation Robert Hakel was indicted by a Federal Grand Jury for possession of cocaine and possession of cocaine with intent to distribute.

6. On October 11, 1989 I spoke with Max Marr who is ... now retired.... I have personal knowledge that Marr was the lead investigator on the wiretap investigation targeting Robert Hakel in 1984. Marr stated to me that Hakel was convicted in 1985 of possession of cocaine and possession of cocaine with intent to distribute.... Max Marr further stated to me that during the investigation ... it was revealed through surveillance that Robert Hakel used what is called a safe house to store his cocaine. The safe house was a condominium.... Marr further stated that on almost every occasion that they followed Hakel when he was doing a drug sale that he went to the safe house prior to making his contact to retrieve the cocaine. I also know through my involvement during that investigation that during the search of the condominium ... that over one pound of cocaine was found in the ceiling....

Upon executing the warrant, police officers found plastic bags containing several ounces of cocaine powder hidden in the bathroom ceiling. The officers did not find any scales, other paraphernalia, empty plastic bags, or records in the room.

Zen subsequently executed a second affidavit in support of a request for a warrant to search Hakel's residence. The affidavit incorporated his prior affidavit by reference, a copy of which was attached thereto, and contained the following statements:

2. In the early morning hours of October 12, 1989 your Affiant and other members of the Mesa County Narcotics Enforcement Team executed a search warrant ... on Room 271 at the Best Value Inn.... As a result of that search warrant, approximately 14 ounces of a white powdery substance which later was confirmed to be cocaine was removed....

3. Based on the observations that were made and contained in the attached Affidavit, (Exhibit A), it is clear to your Affiant from his training and experience that Robert Hakel is substantially involved in the trafficking of cocaine. I also know through my training and experience that individuals trafficking and distributing controlled substances habitually keep records and other written documents concerning the amount of cocaine in which they sell and the prices paid for it.... Your affiant would state from his training and experience that since no records or paperwork having to do with the sale or transactions of cocaine [were] found in Room 271 where the cocaine was located and that during the prior wiretap investigation in 1984, your affiant has personal knowledge that Mr. Hakel kept records of his transactions in cocaine. There is probable cause to believe that such records and paperwork associated with the purchase and distribution of controlled substances, to wit: cocaine would be located at his residence....

A warrant to search Hakel's residence was issued by a county court judge. Officers executing the warrant found no cocaine, paraphernalia, or records of drug transactions, but did discover over $40,000 in cash.

Before trial, Hakel filed a motion to prohibit the prosecutor from offering the $40,000 cash into evidence. Hakel contended that the initial warrant to search room 271 of the Best Value Inn was not supported by probable cause, that the search of his residence had been conducted on the basis of information obtained from the initial unlawful search, and that the $40,000 cash seized from his residence must therefore be suppressed un-

der the fruit of the poisonous tree doctrine. The trial court denied the motion. It concluded that Zen's initial affidavit, when considered in a common sense manner, established probable cause that evidence of criminal conduct existed in room 271 of the motel. It then rejected Hakel's fruit of the poisonous tree argument. Hakel was convicted of all of the ten counts charged and was sentenced to concurrent sixteen-year sentences on each substantive count.

On appeal, Hakel argued, *inter alia*, that the two affidavits submitted by Zen did not establish probable cause to search Hakel's residence. The court of appeals agreed with the argument, reversed the judgments of conviction and remanded the case for a new trial. The court held that the warrant authorizing the search of Hakel's residence was not supported by probable cause and that the admission into evidence of the $40,000 in cash seized during that search did not constitute harmless error.[7]

## II

■ The Fourth and Fourteenth Amendments to the United States Constitution and Article II, Section 7, of the Colorado Constitution protect persons against unreasonable searches and seizures by government agents. Government officials are, with few exceptions, prohibited from searching private homes in the absence of a warrant issued by a judicial officer authorizing such search. *Hoffman v. People*, 780 P.2d 471, 474 (Colo. 1989); *People v. Thiret*, 685 P.2d 193, 200–01 (Colo.1984). A warrant to search a residence may be issued only if the judicial officer determines from verified information submitted in support of the request for the warrant that probable cause exists to believe that

evidence of criminal conduct will be discovered during the course of the search. *People v. Turcotte–Schaeffer*, 843 P.2d 658, 659–60 (Colo.1993). The verified information must include sufficient facts to warrant a person of reasonable caution to believe that contraband or other evidence of criminal activity is located at the place to be searched. *Id.* at 660. *See United States v. Barker*, 623 F.Supp. 823, 843 (D.Colo.1985).

■ Affidavits submitted in support of a request for the issuance of a search warrant should be interpreted in a common sense fashion, *Bartley v. People*, 817 P.2d 1029, 1033 (Colo.1991), and the ultimate issue is whether, considering the totality of the circumstances, the affidavit establishes a fair probability that contraband or evidence of crime will be found. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Probability, not certainty, is the touchstone of probable cause, *People v. Ball*, 639 P.2d 1078, 1082 (Colo.1982), and deference should be given to the initial judicial determination regarding probable cause. *United States v. Schuster*, 775 F.Supp. 297, 307 (W.D.Wis.1990). However, in recognition of the significance of a person's right to privacy in his or her residence, law enforcement officials should in all but the most compelling of circumstances obtain warrants prior to performing any search of a residence. *See People v. Taube*, 864 P.2d 123 (Colo.1993); *People v. Hill*, 690 P.2d 856, 859 (Colo.1984).

■ The court of appeals based its conclusion that Zen's two affidavits did not establish probable cause for issuance of a warrant to search Hakel's residence on the premise that the affidavits failed to establish any nexus between evidence of criminal conduct

---

7. During oral argument the People suggested that the court of appeals improperly considered Hakel's argument that the two affidavits failed to establish probable cause to search his residence because at trial he argued only that the search of his residence was based on evidence obtained from an unconstitutional search of the motel. However, the People did not raise this argument before the court of appeals and did not assert it prior to oral argument in this court. While a

broad reading of Hakel's suppression motion might support the argument that the issue of probable cause to search his residence had been raised, the trial court based its ruling concerning the search of the residence on the fruit of the poisonous tree doctrine and Hakel conceded at oral argument that the probable cause issue had not been asserted at trial. Because both parties chose to address the probable cause issue before the court of appeals, we elect to do so here.

and Hakel's residence. We do not read the affidavits so narrowly. Zen averred not only that drug traffickers in general create documents recording their illicit transactions, but also that Zen had personal knowledge that Hakel did create such documents. Zen also averred that he personally had participated in an earlier investigation of Hakel during which evidence of criminal conduct was recovered from a safe house frequented by Hakel and that Hakel had been convicted of possessing cocaine with intent to distribute as a result of that investigation.

■ The affidavits also established that Hakel went to the motel directly from his residence en route to the site of the second sale and returned to his residence immediately after that sale—a pattern of conduct similar to that adopted by Hakel in connection with his prior illegal conduct. To be sure, Zen's affidavits contained no statements that persons had observed cocaine, paraphernalia, or records of controlled substance transactions in Hakel's residence. *See People v. Leftwich,* and *People v. Wade,* 869 P.2d 1260 (Colo.1994); *People v. Massey,* 178 Colo. 141, 144, 495 P.2d 1141, 1142 (1972); *People v. Sprowl,* 790 P.2d 848, 850–51 (Colo.App.1989). However, the link between suspected criminal activity and a specific location to be searched may be established by circumstantial evidence and proper inferences drawn therefrom. *See People v. Higbee,* 802 P.2d 1085, 1089 (Colo.1990); *People v. Campbell,* 678 P.2d 1035, 1040 (Colo. App.1983).

Zen's general opinion about the conduct of most drug traffickers may not in itself have been sufficient to establish probable cause to believe records of the two cocaine transactions were located in Hakel's residence. *State v. Mische,* 448 N.W.2d 415, 417–18, 421–22 (N.D.1989). However, his surmise as an experienced investigator of drug offenses who had participated in a prior investigation of Hakel that the latter probably kept records of the two transactions in his residence was entitled to some consideration. *Bartley,* 817 P.2d at 1033; *Ball,* 639 P.2d at 1082. In

our view, common sense inferences from Zen's personal knowledge of Hakel's present and prior conduct, including the knowledge that on one occasion evidence of Hakel's drug trafficking had been found in a safe house visited by Hakel while traveling to the site of a drug transaction, established probable cause to believe that evidence of the two cocaine transactions witnessed in this case by police and sheriff officials was located in Hakel's residence. The fact that no records of drug-related activities were found in Hakel's residence is not germane to the question of whether Zen's affidavits established probable cause for the issuance of a warrant to conduct the search.

Our conclusion in this case is supported by our decision in *Higbee,* 802 P.2d 1085. In *Higbee,* the defendant, a suspected narcotics dealer, was also suspected of having booby-trapped his automobile with high explosives. The defendant was observed carrying packages from the car into his apartment just prior to his arrest. When a search of the automobile uncovered no explosives, the defendant's apartment was searched, where narcotics were found. We concluded that under all of the circumstances the officers had probable cause to search the apartment and that exigent circumstances were present to excuse their failure to obtain a warrant.

In *Higbee,* the defendant's association with the apartment and the fact that he was seen carrying packages into the building provided the requisite nexus between the suspected illicit items and the location to be searched. We concluded that a reasonable inference could be drawn in those circumstances that the packages contained explosives. In this case, Zen's personal knowledge of Hakel's prior conduct, together with the observations of other officials of Hakel's conduct in connection with the two cocaine sales, established the nexus between the items to be seized and the place to be searched necessary to support the county court judge's finding of probable cause to issue the warrant for the search of Hakel's residence.

### III

For the foregoing reasons, we reverse the judgment of the court of appeals and remand

the case to that court with directions to reinstate the judgments of conviction entered against the defendant by the trial court.

LOHR, J., dissents.

ERICKSON and SCOTT, JJ., join in the dissent.

Justice LOHR dissenting:

The majority concludes that the affidavit upon which the search of Robert Hakel's residence was based was sufficient to establish probable cause to believe that records of Hakel's drug transactions were located at his residence. It therefore reverses the judgment of the court of appeals and remands the case with directions to reinstate the judgment of conviction entered against Hakel by the trial court. Maj. op. at 1229–30. However, while the information in the affidavit may have established probable cause to believe that the records existed, that information contained nothing to establish, beyond the level of mere suspicion, that the records were to be found at Hakel's residence. Therefore, I agree with the court of appeals' conclusion that the affidavit supporting the search warrant for Hakel's residence failed to show the existence of probable cause. *People v. Hakel*, No. 90CA1966, slip op. at 3 (Colo.App. Nov. 17, 1992) (not selected for publication). Accordingly, I would affirm the judgment of the court of appeals.

The majority adequately presents the facts of the case. Both the United States Constitution and the Colorado Constitution guarantee the right of the people to be secure in their persons against unreasonable searches and seizures by the government. U.S. Const. amends. IV, XIV; Colo. Const. art. II, sec. 7. This right is safeguarded by the probable cause standard which is designed to protect citizens from "rash and unreasonable interferences with privacy" yet give "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). In determining whether an affidavit for a search warrant establishes proba-

ble cause, a magistrate must apply a totality-of-the-circumstances analysis. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *People v. Pannebaker*, 714 P.2d 904, 907 (Colo.1986) (adopting the totality-of-the-circumstances test of *Gates* for the purpose of Article II, Section 7, of the Colorado Constitution). The magistrate must determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. A reviewing court must inquire whether the magistrate had a " 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). " 'In the case of a search, probable cause means reasonable grounds to believe that [the item sought] is located in the area to be searched.' " *People v. Higbee*, 802 P.2d 1085, 1089 (1990) (quoting *People v. Melgosa*, 753 P.2d 221, 225 (Colo. 1988)); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976–77, 56 L.Ed.2d 525 (1978) ("The critical element in a reasonable search is ... that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought.").

In the present case, the affidavit at issue, dated October 12, 1989, incorporated a previous affidavit and provided the following information: Hakel was convicted in 1985 of possession of cocaine and possession of cocaine with intent to distribute; individuals trafficking and distributing controlled substances habitually keep records of their cocaine transactions; in 1984, Hakel kept records of his transactions in cocaine; in 1984, Hakel used a "safe house" to store his cocaine; earlier on October 12, 1989, a warrant had been executed for a search of a motel room used by Hakel; in that search, cocaine was discovered but no records were found.

As a result of this information, the police believed that records of Hakel's drug transactions were located *somewhere*. Nevertheless, even if that belief rose to the level of

probable cause, the belief that the records were located *at Hakel's residence* did not rise above the level of mere suspicion. *See People v. Hart,* 718 P.2d 538, 540 (Colo.1986) (noting that a prime motivation for adoption of the Fourth Amendment was hostility to seizures based on mere suspicion). Nothing in the affidavit established that Hakel previously kept records of his drug transactions at his residence.[1] The affidavit merely stated that in 1984, Hakel "kept records of his transactions in cocaine." The totality of the facts asserted in the affidavit did not imply that the records were more likely to be found at Hakel's residence than at any other location to which Hakel had access. Therefore, no reasonable grounds existed to believe that the records were located at any particular location and the affidavit thus did not establish probable cause to search Hakel's residence.

Because I agree with the court of appeals' conclusion that the search of Hakel's residence was not supported by probable cause, I would affirm both the court's reversal of the trial court's judgment of conviction and its remand for retrial with instructions that evidence discovered as a result of that search be suppressed. *Hakel,* slip op. at 3, 5–6. Accordingly, I respectfully dissent.

ERICKSON and SCOTT, JJ., join in this dissent.

---

1. The majority finds similarities in the affidavit between Hakel's movements in 1984 and in the present case. Maj. op. at 1228–29. However, the only similarity between these movements is that in 1984, Hakel went to the safe house prior to making drug sales and in the present case, Hakel visited the motel room before making a drug sale. Referring to the 1984 investigation, the affidavit stated that "on almost every occasion that [investigators] followed Hakel when he was doing a drug sale ... he went to the safe house prior to making his contact to retrieve the cocaine." The affidavit did not mention Hakel's residence in connection with the 1984 investigation. The mere fact that in the present case Hakel left from and returned to his residence before and after visiting the motel and making the sale did not create probable cause to believe that records would be found at his residence.