**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Beverly WRIGHT, Defendant–Appellee.**

No. 90SA403.

Supreme Court of Colorado, En Banc.

Feb. 11, 1991.

John Suthers, Dist. Atty., Robert D. Jones, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Kenneth Dresner, Colorado Springs, for defendant-appellee.

Justice QUINN delivered the Opinion of the Court.

In this interlocutory appeal, the People challenge an order suppressing illegal drugs and drug paraphernalia seized by a police officer during a warrantless search of the defendant's purse at a hospital while she was undergoing an x-ray examination after an automobile accident. The district court ruled that the search of the purse was not based on exigent circumstances and thus was constitutionally unreasonable. We affirm the suppression ruling.

I.

The facts are not disputed. The defendant, Beverly Wright, is charged in the District Court of El Paso County with the following three offenses, all of which were alleged to have been committed on May 14, 1990: possession of a schedule II controlled substance, methamphetamine [1]; possession with intent to distribute or sell methamphetamine [2]; and possession of not more than one ounce of marijuana.[3] Defendant pled not guilty to the charges and filed a pretrial motion to suppress on the basis that the evidence underlying the charges was seized without a warrant in violation of the United States and Colorado Constitutions. U.S. Const. amends. IV and XIV; Colorado Const. art. II, § 7.

The evidence presented at the hearing on the suppression motion established the following facts. Shortly before 9:00 a.m. on May 14, 1990, the defendant was involved in a two-car accident at the intersection of Cimarron and Interstate Highway 25 in Colorado Springs. Officer Newell of the Colorado Springs Police Department was dispatched to the scene. When he arrived there, the defendant was still in her automobile and an ambulance and paramedics were at the accident site. The officer approached the defendant's automobile and asked her whether she was all right. The defendant, who was conscious and appeared to be coherent, stated that she was not all right, at which point the officer called over the paramedics to assist her.

1. § 12–22–310(2)(a), 5 C.R.S. (1985), and § 18–18–105, 8B C.R.S. (1986 & 1990 Supp.).

2. §§ 12–22–310(2)(a), 5 C.R.S. (1985), and § 18–18–105, 8B C.R.S. (1986 & 1990 Supp.).

3. § 18–18–106(1), 8B C.R.S. (1986).

Officer Newell again approached the defendant's car in order to speak to her, but the paramedics were administering aid to her so he did not interrupt their efforts. While he was standing near the defendant's vehicle, one of the paramedics handed the officer the defendant's purse. Officer Newell put the purse on the floor of the front seat of his vehicle. The officer did not open the defendant's purse and did not attempt to obtain identifying information from the defendant at this time.

Although the defendant had no obvious cuts or bruises from the accident, she was taken by ambulance to a hospital. Officer Newell completed an on-site investigation of the accident and determined that the defendant was not at fault and would not be charged with any traffic violation. The officer then took the defendant's purse to the hospital and was informed that the defendant was in the x-ray room and would be there for some time. Officer Newell made no attempt to contact the defendant in the x-ray room, although he admitted in his suppression testimony that entering the x-ray room was "no big deal" and that he had done so on many prior occasions. The officer further testified that "during the day shift hours the x-ray techs are not as nice as they are on nights" and he believed that he would probably be in the way if he went into the room.

Rather than attempting to contact the defendant, the officer went to a nurses' "break room" and searched the defendant's purse. The officer was looking for the defendant's driver's license and car registration, as well as proof of insurance, in order to complete his accident report. Officer Newell opened the purse and observed a small zipper bag inside. He opened the bag and found what appeared to be a "cocaine kit" consisting of a spoon, a razor blade, a small slab of marble, and several small pieces of paper. The officer next opened a larger zipper bag inside the purse and found what appeared to be drug paraphernalia, some marijuana, a small container of pills, and some rolls of one-dollar bills. The officer then opened the defendant's wallet, which also was inside the purse, and found the defendant's driver's license inside the wallet. After completing his search of the defendant's purse, Officer Newell contacted a narcotics officer, who arrived at the hospital and stated that the pills discovered in the container were methamphetamine. The defendant came out of the x-ray room approximately thirty minutes later, and the officer informed her of the materials seized from her purse.

At the conclusion of the evidence, the district court made factual findings substantially identical to the aforementioned evidence and concluded that the officer's act of opening and looking into the defendant's purse constituted a search, that the search was not based on probable cause or exigent circumstances, that there was no valid administrative basis for the warrantless search, and that the search was constitutionally unreasonable. The People thereafter filed this interlocutory appeal.

## II.

■ In resolving a motion to suppress, a trial court must engage in both factfinding and law application. *People v. Quezada,* 731 P.2d 730, 732 (Colo.1987); *accord, People v. McIntyre,* 789 P.2d 1108, 1111 (Colo. 1990); *People v. Drake,* 785 P.2d 1257, 1263 (Colo.1990). "A court's findings of historical fact are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record." *Quezada,* 731 P.2d at 732; *see People v. Raffaelli,* 647 P.2d 230, 236 (Colo. 1982); *People v. Pineda,* 182 Colo. 385, 387, 513 P.2d 452, 453 (1973). A trial court's ultimate resolution of a suppression motion, however, is subject to reversal if the court applies an erroneous legal standard to the facts of the case. *McIntyre,* 789 P.2d at 1111; *Quezada,* 731 P.2d at 732–33.

The People in this case have no quarrel with the trial court's findings of historical fact. Indeed, the People concede that at the time of Officer Newell's search the defendant was not suspected of any criminal activity and had a reasonable expectation of privacy in the contents of her purse. Notwithstanding these concessions, the

People argue that the suppression ruling should be reversed for either of the following reasons: first, the search of the defendant's purse was justified under the medical emergency exception to the warrant requirement; and second, the officer's administrative responsibility for completing an accident report served to justify the warrantless search of the defendant's purse in order to determine her identity and other information necessary for a complete report. We find the People's arguments devoid of merit.

### III.

The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution provide that the people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and thus proscribe all unreasonable searches and seizures. "[I]t is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). We are required to apply no less stringent a principle in construing the Colorado constitutional proscription against unreasonable searches and seizures. *See People v. Higbee*, 802 P.2d 1085, 1088 (Colo.1990); *People v. Clements*, 661 P.2d 267, 270–71 (Colo.1983).

■ The contents of a purse or wallet are of an extremely personal nature, and, in the absence of consent, any warrantless search of these items can be justified only under one of the narrowly defined exceptions to the warrant requirement. These exceptions, which to a great extent are encompassed within the rubric of "exigent circumstances," include emergency situations that pose a threat to the life or safety of the person searched or others. *See Higbee*, at 1088; *People v. Thompson*, 770 P.2d 1282, 1285 (Colo.1989); *People v.*

*Malczewski*, 744 P.2d 62, 66 (Colo.1987); *People v. Amato*, 193 Colo. 57, 562 P.2d 422 (1977); 2 W. LaFave, *Search and Seizure* § 5.5(c) (1987). Moreover, because police officers have varied responsibilities and at times must obtain information for purposes unrelated to the detection of crime, warrantless searches and seizures have also been upheld when conducted in good faith and reasonably necessary to the discharge of a legitimate administrative duty, even though incriminating evidence is inadvertently discovered as a consequence. *See* 2 W. LaFave, *Search and Seizure* § 5.5(d). The scope of any exception to a warrant requirement, however, must be strictly circumscribed by a real exigency justifying the initiation of a warrantless intrusion, and the burden is upon the prosecution to establish that any such intrusion was necessary under the circumstances of a particular case. *Mincey*, 437 U.S. at 390–91, 98 S.Ct. at 2412; *Thompson*, 770 P.2d at 1285; *People v. Hogan*, 649 P.2d 326, 331 (Colo.1982).

### A.

■ The People initially rely on the so-called medical emergency variant of the exigent circumstances doctrine to support Officer Newell's search of the defendant's purse at the hospital. The medical emergency exception will support a warrantless search of a person's purse or wallet when the person is found in an unconscious or semi-conscious condition and the purpose of the search is to discover evidence of identity and other information that might enhance the prospect of administering appropriate medical assistance to the person. *See generally Mincey*, 437 U.S. at 392–93, 98 S.Ct. at 2413; *State v. Prober*, 98 Wis.2d 345, 360–366, 297 N.W.2d 1, 9–12 (1980), *rev'd in part by State v. Weide*, 155 Wis.2d 537, 455 N.W.2d 899 (1990) (overruling *Prober* not on medical emergency exception but on that part of *Prober* addressing whether search of purse in automobile was justified as inventory search). The rationale for this exception is that the need to protect or preserve life or avoid serious injury to another is paramount to the right

of privacy and thus is justification for what would otherwise be an invalid search in the absence of an emergency. *Mincey*, 437 U.S. at 392, 98 S.Ct. at 2413; *Prober*, 98 Wis.2d at 364–365, 297 N.W.2d at 11.

■ Consistent with the constitutional principle of strictly limiting warrantless intrusions to real exigencies, two factors predominate the analysis of warrantless searches and seizures under the medical emergency exception: first, there must be facts which, when objectively analyzed, establish the existence of a real and immediate danger to the life or safety of another; and second, the officer's purpose in conducting the search must be to render aid or assistance to the endangered person. *See, e.g., United States v. Dunavan*, 485 F.2d 201 (6th Cir.1973) (where passerby found defendant in disabled car, foaming at the mouth and unable to talk, and police officer thereafter arranged for defendant's transportation to hospital, after which passerby turned over to officer two locked briefcases found in defendant's car, officer's search of briefcase for identification or other information potentially helpful to hospital personnel in diagnosing and treating defendant's condition satisfied medical emergency exception, and sums of money taken in bank robbery and recovered from briefcase admissible in evidence against defendant); *People v. Smith*, 44 Ill.2d 82, 254 N.E.2d 492 (1969) (where police found defendant suffering from gunshot wound and in semiconscious condition, search of defendant's wallet for identification and information that might help in treating defendant's wound—such as, for example, information concerning blood type, diabetic condition, and allergies to medication and anesthetics—was constitutionally reasonable, and incriminating note recovered from wallet was properly admitted into evidence at defendant's murder trial); *State v. Newman*, 292 Or. 216, 637 P.2d 143 (1981) (search of intoxicated person's purse to obtain identification during transportation to detoxification center not justified under medical emergency exception, since no real emergency existed and public intoxication was not a crime, and illegal drugs found in purse properly suppressed); *State v. Loew-*

*en*, 97 Wash.2d 562, 647 P.2d 489 (1982) (officer's search of defendant's tote bag at hospital for identification and officer's recovery of illegal drugs from bag constituted unlawful search because defendant at that time was under treatment by trained medical personnel and no emergency existed under objective analysis of facts).

■ Under the facts of the instant case, the People's reliance on the medical emergency exception is misplaced. The evidence at the suppression hearing conclusively demonstrated that Officer Newell, when he searched the defendant's purse at the hospital, was not confronted with a situation that posed a threat to the life or safety of the defendant. At the time of the search, the defendant was in the x-ray room of the hospital under the care of trained medical personnel, was conscious and coherent, and, so far as the record suggests, was not seriously injured and was fully able to disclose information that might be useful in her diagnosis and treatment. In addition, the evidence also showed, again without contradiction, that Officer Newell's purpose in searching the defendant's purse was not to obtain information that might possibly have been useful in diagnosing or treating the defendant. On the contrary, the officer's sole purpose in searching the purse was to obtain the defendant's driver's license and other information for inclusion in his investigative report of the accident.

### B.

The People also rely on the officer's administrative duty to complete a traffic accident report as a justification for the warrantless search of the defendant's purse. We acknowledge that there may be circumstances where it is necessary for an officer to make a warrantless search of a purse or wallet for information essential to the proper discharge of administrative responsibilities unrelated to the detection of crime. *See* 2 W. LaFave, *Search and Seizure* § 5.5(d). Such a search, however, must be limited to those situations in which there is no reasonable alternative available to the

officer. Only in this way can the general proscription against warrantless searches be given its intended effect.

■ Under the evidentiary state of the record before us, it is abundantly clear that Officer Newell could have obtained the information for completion of the accident report by employing any one of several reasonable alternatives. He could have asked a nurse or doctor to take the purse to the defendant in the x-ray room so that the defendant could retrieve her driver's license and provide the officer with the information required to be included in the accident report. Alternatively, Officer Newell might have requested permission to talk to the defendant in the x-ray room and then could have given the defendant her purse and asked her for whatever information he needed. Finally, the officer could have asked the nurse, doctor, or the hospital admissions office to provide him with the defendant's name and address and then left directions for the defendant to report to the police station with the information needed for the completion of the report. Simply stated, the officer was not confronted with a situation in which there was no other reasonable alternative other than to search the defendant's purse for the information necessary for a completed report.

We thus conclude that the trial court did not err in ruling that the warrantless search of the defendant's purse was not sustainable under the medical emergency variant of the exigent circumstances doctrine or as a valid administrative search and that the search was constitutionally unreasonable. The suppression ruling is accordingly affirmed.