The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

James WINPIGLER, Defendant–Appellee.

No. 99SA272.

Supreme Court of Colorado,
En Banc.

Dec. 6, 1999.

⌁394.4(1)

Frank J. Daniels, District Attorney Twenty–First Judicial District, Brian J. Flynn, Deputy District Attorney, Grand Junction, Colorado, Attorneys for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, William T. McNulty, Deputy State Public Defender, Grand Junction, Colorado, Attorneys for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to C.A.R. 4.1, seeking reversal of the trial court's order suppressing all evidence obtained following the warrantless entry of the police into the defendant's residence. The defendant moved for suppression of the evidence on the grounds that the police entry into his house violated his constitutional rights. The trial court agreed, holding that although the police may have possessed probable cause to believe a crime was being committed in the defendant's residence, they lacked sufficient exigent circumstances to justify the warrantless entry. Upon review of the record, we agree that the police had probable cause but lacked the necessary exigent circumstances to justify the warrantless entry. Accordingly, we affirm the order of the trial court suppressing all evidence obtained after the warrantless entry.

## I. FACTS AND PROCEEDINGS BELOW

On February 13, 1999, Officer Derek Rosales of the Grand Junction Police Department conducted a traffic stop of a vehicle on South Fifth Street in Grand Junction. During his contact with the two occupants of the vehicle, Officer Rosales learned that the driver of the vehicle possessed an outstanding warrant for his arrest. Officer Rosales placed the driver under arrest and a search of the vehicle revealed items consistent with the manufacture of methamphetamine. At this point, Officer Rosales contacted the Mesa County Sheriff's Department Grand Valley Joint Drug Task Force, and additional officers from that task force arrived to assist with the narcotics investigation. The passenger in the vehicle told the police he and the driver were on their way to see the defendant, James Winpigler, at the time they were stopped by Officer Rosales. The police were aware that Mr. Winpigler had been arrested once before for menacing with a knife, and that he was known to carry knives.

The police attempted to contact Mr. Winpigler at his residence nearby by knocking on his door, but received no response. Two individuals, Brad West and Amanda Thompson, then arrived at the residence. The police learned from them that they had been staying with Mr. Winpigler and that Mr. Winpigler was probably asleep inside the residence because he had been feeling ill. While the officers stayed on the front porch, Mr. West entered the residence through the back door and opened the front door. The officers asked Mr. West to wake up Mr. Winpigler and bring him to the front door so they could speak with him. Mr. West left and returned back into the residence to wake up Mr. Winpigler.

As Mr. West had left the front door open, the police could see partially into the residence from the front porch and observed a collection of swords mounted on a wall. The police also smelled the strong odor of iodine, which they knew from their training and experience to be consistent with the manufacture of methamphetamine. After waiting for approximately thirty seconds for someone to return, the police entered the residence and secured the premises. After the police entered the residence and brought Mr. Winpigler to the front room, Mr. Winpigler consented to a search of the premises. The police then searched Mr. Winpigler's bedroom and found a handgun with the serial

number filed off, and various items consistent with the manufacture of methamphetamine. The police placed Mr. Winpigler under arrest and found three packages containing methamphetamine in Mr. Winpigler's pocket. At this point, the police obtained a search warrant for the premises, conducted a more thorough search, and found several more items consistent with the manufacture of methamphetamine as well as numerous weapons. The police then transported Mr. Winpigler to jail where he made a statement after waiving his *Miranda* rights by signing a preprinted "Waiver of Rights" form.

The Mesa County District Attorney charged Mr. Winpigler with several offenses relating to possession of controlled substances and paraphernalia, possession of illegal weapons, and reckless endangerment. Mr. Winpigler moved to suppress all evidence obtained by the police following the warrantless entry into his residence, alleging a violation of his rights under the United States and Colorado Constitutions. Specifically, Mr. Winpigler argued that the police entered his home without the requisite exigent circumstances to justify the warrantless entry and that all evidence obtained thereafter, including his statement to the police, must be suppressed as fruits of the illegal entry.

The trial court considered Mr. Winpigler's motion at a suppression hearing and found that the police "probably had probable cause to believe that at some point methamphetamine manufacture had occurred in the house, and ... that perhaps conspiracy to commit to manufacture was afoot." However, the court found that the "circumstances and the reasonable inferences from them did not constitute exigent circumstances justify-

ing a warrantless entry into the residence." In making this finding, the court rejected the State's arguments that the exigent circumstances consisted of the officers' fear for their personal safety, the possibility that improperly disposed of chemicals could blow up, and the risk of destruction of evidence. The trial court suppressed all evidence obtained following the entry into the defendant's home, including the defendant's statement at the jail.

## II. ANALYSIS

The Fourth Amendment of the United States Constitution and article II, section 7 of the Colorado Constitution proscribe all unreasonable searches and seizures.[1] A warrantless search is presumed to violate the constitutional provisions forbidding unreasonable searches and seizures, especially where there is a warrantless intrusion into a home. *See Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *People v. Jansen,* 713 P.2d 907, 911 (Colo.1986). To overcome this presumption, the prosecution has the burden of establishing that the warrantless search is supported by probable cause and is justified under one of the narrowly defined exceptions to the warrant requirement. *See People v. Garcia,* 752 P.2d 570, 581 (Colo.1988). One such exception to the warrant requirement applies when exigent circumstances exist that necessitate immediate police action. *See Mendez v. People,* 986 P.2d 275, 279 (Colo. 1999); *People v. Kluhsman,* 980 P.2d 529, 534 (Colo.1999); *People v. McKinstry,* 843 P.2d 18, 19–20 (Colo.1993); *People v. Malczewski,* 744 P.2d 62, 66 (Colo.1987). We have recognized the exigent circumstances exception in the following three situations: (1) the

---

1. The Fourth Amendment to the United States Constitution provides:

 The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

 U.S. Const. amend. IV.

 Article II, section 7 of the Colorado Constitution provides:

 The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

 Colo. Const. art. II, § 7.

bona fide "hot pursuit" of a fleeing suspect; (2) the risk of immediate destruction of evidence; and (3) a colorable claim of an emergency which threatens the life or safety of another. *See Kluhsman*, 980 P.2d at 534; *People v. Higbee*, 802 P.2d 1085, 1088 (Colo. 1990). In these three circumstances, evidence discovered in the course of a warrantless search is admissible if the prosecution establishes both probable cause to support the search and exigent circumstances justifying the warrantless entry. *See Kluhsman*, 980 P.2d at 534; *see also People v. Crawford*, 891 P.2d 255, 258 (Colo.1995). Finally, the scope of the intrusion must be strictly circumscribed by the exigency justifying the initiation of the warrantless intrusion. *See People v. Wright*, 804 P.2d 866, 869 (Colo. 1991).

If law enforcement officials conduct an unconstitutional search or seizure, any illegally obtained evidence is subject to the exclusionary rule, which seeks to deter such wrongful action. *See United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *McKinstry*, 843 P.2d at 20. This prohibition applies as well to the fruits of the illegally seized evidence. *See Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Lewis*, 975 P.2d 160, 170 (Colo.1999); *People v. Jones*, 828 P.2d 797, 800 (Colo.1992).

The State urges us to reverse the trial court's suppression order on the grounds that the warrantless entry by the police into the defendant's home was justified by both probable cause and exigent circumstances. Conversely, the defendant contends that even if the police possessed probable cause, they lacked the requisite exigent circumstances to justify the warrantless entry.

Our task is to review the record and the trial court's findings to determine whether the necessary probable cause and exigent circumstances existed at the time of the police entry into the defendant's residence to justify the warrantless intrusion. The existence of probable cause and exigent circumstances must be determined by evaluating the facts available to the police at the

time of the warrantless entry and search. *See Jansen*, 713 P.2d at 911. We accord deference to the trial court's findings of fact and will not overturn them provided they are supported by competent evidence in the record. *See People v. Thomas*, 853 P.2d 1147, 1149 (Colo.1993). An ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings, however, is subject to correction by a reviewing court. *See People v. Quezada*, 731 P.2d 730, 732–33 (Colo.1987). When the controlling facts are undisputed, the legal effect of those facts constitutes a question of law which is subject to de novo review. *See People v. D.F.*, 933 P.2d 9, 15 (Colo.1997).

## A. PROBABLE CAUSE

Although the constitutional requirement of a warrant can be excused if exigent circumstances are present, the probable cause requirements are "at least as strict in warrantless searches as in those [executed] pursuant to a warrant." *See People v. Thompson*, 185 Colo. 208, 212, 523 P.2d 128, 131 (1974). Our analysis of the constitutionality of this search must therefore begin with an examination of whether the police possessed probable cause to enter Mr. Winpigler's residence. As noted earlier, our review here is limited to those facts available to the police at the time of the entry.

The constitutional standard of probable cause serves to safeguard against "unreasonable interferences with privacy while allowing fair leeway for enforcing the law in the community's protection." *Higbee*, 802 P.2d at 1088 (internal quotations omitted) (citations omitted). The analysis of probable cause under both the state and federal constitutions requires us to look at the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *People v. Leftwich*, 869 P.2d 1260, 1265 (Colo.1994). Probable cause is a flexible standard which is to be measured not by a "more likely true than false" standard but by a commonsense, nontechnical standard of reasonable cause to believe. *See People v. Melgosa*, 753 P.2d 221, 225 (Colo.1988). In the case of a search, probable cause requires

the police to establish that reasonable grounds existed to believe that contraband or evidence of criminal activity was located in the area to be searched. *See id.* Judges, considering all of the circumstances, must make a practical, commonsense decision whether a fair probability exists that a search of a particular place will reveal contraband or evidence of a crime. *See People v. Altman,* 960 P.2d 1164, 1167 (Colo.1998); *see also Higbee,* 802 P.2d at 1088. The information necessary to support a finding of probable cause need not rise to the level of certainty. *See People v. Drake,* 785 P.2d 1257, 1263 (Colo.1990).

In view of the facts of the case before us, we agree with the trial court's finding that the police had probable cause to believe that Mr. Winpigler's residence contained contraband, in this case methamphetamine, and evidence of criminal activity, specifically, conspiracy to manufacture methamphetamine.

 We reach this conclusion based upon an examination of the totality of the circumstances known to the police at the time of the warrantless entry, to wit: (1) the fact that the passenger in the vehicle stopped by Officer Rosales, which contained evidence of methamphetamine manufacturing, told the police that they were on their way to see the defendant; and (2) the fact that the police could smell the odor of iodine, known by them to be consistent with the manufacture of methamphetamine, while standing on the doorstep of the defendant's residence. This information is sufficient to support a finding that the police had probable cause to search the defendant's residence.

The use of smell to support a finding of probable cause has been recognized since *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). While concluding that no exigent circumstances existed in that case to justify the warrantless search, the *Johnson* court stressed that a trained officer's testimony about a distinctive odor "might very well be found to be evidence of most persuasive character" in a probable cause determination. *Id.* at 12, 68 S.Ct. 367. We have previously held that the smell of burning marijuana can provide the police with probable cause to search or arrest. *See Mendez,* 986 P.2d at 281; *People v. Baker,* 813 P.2d 331, 333 (Colo.1991). In *Mendez* we noted that the "smell of burning marijuana is sufficiently distinctive as to be readily identifiable to a trained police officer." *Mendez,* 986 P.2d at 281.

In the instant case, Officer Rentfrow testified in the suppression hearing that he "immediately noticed an overwhelming odor of iodine" when Mr. West opened the front door to the defendant's residence. The officer also testified that the odor was distinctive and, in his experience, "specific to the cooking of methamphetamine." We note that Officer Rentfrow also testified at the suppression hearing about the extensive training he has received in narcotics investigation, and, specifically, methamphetamine labs, as well as his own experience in investigating methamphetamine labs. Just as a trained and experienced police officer's detection of the odor of burning marijuana supported a probable cause determination in *Mendez* and *Baker,* so too, in this case, does Officer Rentfrow's detection of the strong, distinctive odor of iodine emanating from the defendant's residence.[2] The smell of iodine from inside the residence, combined with the fact that the officers knew that a vehicle with items used for methamphetamine manufacture had been stopped on its way to the defendant's residence, compels the conclusion that the police possessed probable cause, based on the totality of the circumstances, to enter the defendant's residence.

## B. EXIGENT CIRCUMSTANCES

Our review of the constitutionality of the police entry into Mr. Winpigler's residence does not end with our holding that probable cause existed. We must now determine whether the failure to obtain a search warrant can be excused by the presence of legally sufficient exigent circumstances. Exigent

---

2. We note that other courts have also used a police officer's detection of the odors associated with methamphetamine manufacture as support for a probable cause determination. *See e.g.,* *United States v. Martinez,* 808 F.2d 1050, 1055–56 (5th Cir.1987); *Wynn v. State,* 996 S.W.2d 324, 327 (Tex.App.1999); *Lowery v. State,* 843 S.W.2d 136, 142 (Tex.App.1992, pet.ref'd).

circumstances justifying a police officer's warrantless entry into a home have been limited to those situations involving a bona fide "hot pursuit" of a fleeing suspect, the risk of immediate destruction of evidence, or a colorable claim of emergency threatening the life or safety of another. *See Kluhsman,* 980 P.2d at 534; *Malczewski,* 744 P.2d at 66. The State argues that two exigent circumstance exceptions to the warrant requirement are present here: (1) a colorable claim of emergency, and (2) a risk of destruction of evidence. We address each in turn.

### 1. Emergency

The State's primary argument for exigent circumstances is that the failure to obtain a warrant was justified because the situation presented an emergency threatening the safety of the police officers and others in the neighborhood. Specifically, the State argues the police became increasingly concerned for their safety while waiting on the doorstep for the defendant to come to the door because they feared some type of ambush as being planned. Additionally, the State contends that the officers feared that individuals inside the home might begin dumping chemicals used for methamphetamine manufacturing which, if mixed properly, could result in an explosion.

■■■ The emergency variant of the exigent circumstances exception requires a showing of an immediate crisis inside the home and the probability that police assistance will be helpful in alleviating that crisis. *See Malczewski,* 744 P.2d at 66. In determining whether the emergency exception has been satisfied, a court must examine the totality of circumstances, including the delay likely to be occasioned by obtaining a warrant, the character of the investigation, and the potential risk posed to other persons from any unnecessary delay, and must evaluate those circumstances as they would have appeared to a prudent and trained police officer at the time of the challenged entry. *See id.*

■■ Turning now to the facts of the instant case, the officers testified that they could see a display of swords mounted on a wall while they stood on the doorstep and that they became increasingly concerned for their safety while waiting. However, the officers did not see anyone approach the swords and attempt to remove them from the wall. Moreover, we agree with the trail court's finding that "the evidence does not reveal any reason why if the officers really thought Mr. Winpigler was awake and arming himself, that they could not simply detain the two people, Mr. West and Ms. Thompson, back off, and secure the premises." [3] With the residence secured, the police could wait in safety for the issuance of a search warrant without posing any additional danger to themselves.[4]

■■ We find the State's additional argument that the police feared that an explosion might occur if chemicals or waste products from methamphetamine manufacture were dumped and mixed improperly to be implausible and contradicted by the facts known to the police at the time of entry. The officers had no particularized information available to them indicating that anyone inside the residence was in the process of dumping chemicals. To the contrary, Officer Rentfrow testified that they could not hear anything indicating any movement inside the residence and that it was "pretty quiet while we were waiting." Moreover, the officers could see partially into the residence from their location and did not see anyone moving

---

**3.** We note that even though the search took place on a Saturday, the facts demonstrate that a judge was clearly available to review a request for a search warrant since police eventually requested and received a warrant *after* they made the warrantless entry.

**4.** We note that other courts have reached this same conclusion. *See, e.g., Minnesota v. Olson,* 495 U.S. 91, 101, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (refusing to disturb state court judgment of no exigent circumstances where it was "evi-

dent the suspect was going nowhere" because three or four police squads surrounded the house); *United States v. George,* 883 F.2d 1407, 1414–15 (9th Cir.1989) (finding no exigent circumstances when several officers had defendant's apartment under surveillance); *State v. McNeal,* 162 W.Va. 550, 251 S.E.2d 484, 489 (1978) (finding no exigent circumstances when four officers could have surrounded residence while fifth officer sought a warrant).

about. The officers' generalized speculation that chemicals or waste products could be present, and that those chemicals might possibly be in the process of being improperly dumped and mixed, which, in turn, might result in an explosion, is insufficient to constitute a showing of the "immediate crisis" required under the emergency exception.[5]

### 2. Destruction of Evidence

 The State also contends that this search is justified by the officers' fear of the risk of destruction of evidence. In order to satisfy this exception, we require a showing that the police have an articulable basis upon which to justify a reasonable belief that evidence is about to be destroyed. *See Mendez,* 986 P.2d at 282; *Garcia,* 752 P.2d at 581. This perceived danger must be real and immediate. *See Mendez,* 986 P.2d at 282. The mere fact that evidence is of a type that can be easily destroyed does not, in and of itself, constitute an exigent circumstance. *See id.*

 In the instant case, the police had no articulable basis upon which to justify a reasonable belief that evidence was about to be destroyed. Although the State contends that the officers were concerned about the possible destruction of evidence when they made entry into the defendant's residence, the State points to no particularized facts in the officers' knowledge that support this position. The officers testified they waited only approximately thirty seconds after Mr. West left to get the defendant before deciding to enter the defendant's residence. During this time, they did not hear or see anything that might indicate that individuals inside the residence were about to destroy evidence. As noted earlier, Officer Rentfrow testified at the suppression hearing that it was "pretty quiet while we were waiting." Thirty seconds was not an unusual period of time to wait for Mr. West to go back into the resi-

dence and get the defendant to come to the door, particularly in light of the fact that the officers had been told earlier that the defendant was ill and probably asleep.

Furthermore, the officers asked Mr. West to go back into the residence to awaken the defendant and alert him to the police presence at his door. Shortly after doing so, the officers claim they became concerned about the possible destruction of evidence, presumably due to the belief that after Mr. West alerted the defendant to the police presence, the defendant might attempt to destroy any incriminatory evidence. We observe that the situation prompting their concern, however, was created by the officers themselves when they chose to send Mr. West back into the residence. In addition, as noted above, the ʼofficers did not hear anything from inside the residence indicating that evidence was about to be destroyed. In short, the facts known to the police at the time of their warrantless entry did not justify a reasonable belief that evidence was about to be destroyed.

Nonetheless, the State contends that our decision in *People v. Baker,* 813 P.2d 331 (Colo.1991), is factually similar to the instant case and supports its argument. In *Baker,* the police knocked on the door of the defendant's residence to investigate an outstanding warrant. Jerald Baker answered the door and refused the officers' request to come into the house to discuss the outstanding warrant. When one of the officers told another officer that he smelled freshly burnt marijuana coming from inside the residence, Baker yelled, "Hey Babe, it's the cops," and attempted to push the door shut. The officers prevented Baker from closing the door and forcibly entered the residence, where they observed a tray with white powder, marijuana, and a marijuana pipe. The officers arrested Baker and his companion.

---

**5.** We note here that other courts have found exigent circumstances in some cases due to the fire or explosive hazard associated with drug manufacturing chemicals. However, those cases each rested on very different factual circumstances than the instant case. *See, e.g., United States v. Echegoyen,* 799 F.2d 1271, 1278–79 (9th Cir.1986) (upholding finding of exigent circumstances when *fire department* was brought to scene and told police that the smell of flammable ether posed a *serious fire hazard* and that *immediate action was necessary*); *United States v. Brock,* 667 F.2d 1311, 1318 (9th Cir.1982) (upholding finding of exigent circumstances when police smelled *cooking chemicals* and observed defendant rush out of residence *choking on fumes*).

In finding that exigent circumstances justified the police entry into Baker's residence, we stated, "Defendant Baker was aware that the officers detected the smell of marijuana, alerted the defendant Griffis of the officers' presence, and then attempted to prevent the officers from entering the residence." *See id.* at 333. In the instant case, conversely, the police did not inform anyone that they detected the smell of iodine and there was no attempt to prevent the officers from entering the residence. The facts before us, therefore, differ significantly from those presented to us in *Baker* and we reject the State's contention that our holding in *Baker* supports a finding of exigent circumstances in the instant case.

In sum, our review of the evidence compels us to conclude that the police lacked sufficient exigent circumstances to justify the warrantless entry of the defendant's residence. The facts known to the officers at the time of their entry into the defendant's residence were insufficient to constitute either a colorable claim of emergency or a risk of destruction of evidence.

### III. CONCLUSION

We conclude that although the police possessed probable cause to search the defendant's residence, they lacked sufficient exigent circumstances to excuse the failure to obtain a warrant. Therefore, we hold that all evidence seized in the defendant's residence after the warrantless entry by the police must be suppressed because it was obtained in violation of the defendant's constitutional rights. Moreover, the defendant's subsequent statement at the jail, although given after a valid *Miranda* waiver, must also be suppressed as a fruit of the illegal entry and search. Accordingly, we affirm the order of the trial court and remand the case to the trial court for further proceedings consistent with this opinion.