**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Toby SMITH, Defendant–Appellee.**

**No. 01SA312.**

Supreme Court of Colorado, En Banc.

March 4, 2002.

**1288**

Frank J. Daniels, District Attorney Tweny–First Judicial District, Brian J. Flynn, Deputy District Attorney, Grand Junction, Colorado, Attorneys for Plaintiff–Appellant.

Stephen L. Laiche, Grand Junction, Colorado, Attorney for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to section 16–12–102(2), 6 C.R.S. (2001) and C.A.R. 4.1, seeking reversal of the trial court's order suppressing all evidence obtained following the warrantless entry of police into Defendant's residence. The trial court ruled that no medical emergency existed to justify the warrantless entry into Defendant's home because there was no "real and immediate danger to the life or safety of this defendant at the point [the police] entered the house," and, therefore, the seizure was unconstitutional. (R. at v. III, p. 101.) We agree. Accordingly, we affirm the trial court's order suppressing the evidence.

## I. FACTS AND PROCEDURAL HISTORY

At the conclusion of an evidentiary hearing, the trial court found the following facts. On February 24, 2001 at approximately 3:15 p.m., Detective Curt Moreno and Sergeant John Zen met outside Defendant's residence to investigate a tip that drug activity was occurring at the residence. Detective Moreno stood on the porch and knocked on the door to the residence, while Sergeant Zen stayed off the porch and to the side of it in order to provide cover to Detective Moreno if needed. Defendant answered the door, and Detective Moreno identified himself as a member of the joint drug task force, said that he had information of drug activity at the house, and told Defendant that he would like to talk to him. Immediately after Detective Moreno's statement to him, Defendant collapsed.

The trial court further found that Defendant was on the ground only an instant before he regained consciousness.[1] The officers then followed Defendant into his residence. Defendant had entered the house on his own without police assistance and sat down on a chair. The officers asked Defendant about his medical condition; however, neither officer contacted emergency medical personnel. Defendant told the officers that he did not want medical assistance. The trial court also found that according to Sergeant Zen, Defendant was immediately lucid and coherent.

The trial court further found that Detective Moreno asked Defendant if he was okay, and Defendant answered that he was "fucked, [and] that he was going to prison." (R. at v. III, p. 97.) In response, Detective Moreno asked Defendant why he was concerned and whether there were drugs in the residence. Defendant told him that there was a small amount of drugs in the residence. Detective Moreno asked Defendant to obtain them or tell him their location. Defendant gave Detective Moreno a plastic container without a lid containing illegal drugs and drug paraphernalia. Defendant then gave Detective Moreno a lid, which appeared to fit the container, with marijuana placed on top and a marijuana pipe. Defendant then consented to a search of his residence; however, police found no additional evidence. Defendant also asked his wife to obtain a tin for him, which contained marijuana seeds. He gave Detective Moreno the tin as well.

Defendant was arrested and charged with possession of a schedule II controlled substance, § 18–18–405(1)(a), 6 C.R.S. (2001), possession of less than one ounce of marijuana, § 18–18–406(1), 6 C.R.S. (2001), possession of drug paraphernalia, § 18–18–428, 6 C.R.S. (2001), and child abuse, § 18–6–401(7)(b)(II), 6 C.R.S. (2001). Defendant filed a motion to suppress the evidence obtained by police after the warrantless entry into his home. The trial court granted his motion, holding that because there was no real and immediate danger to the life or safety of Defendant when police entered the residence, the officers' warrantless entry into Defendant's home was not justified under the medical emergency exception.

## II. THE EMERGENCY EXCEPTION

■ The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution forbid unreasonable searches and seizures. A warrantless search and seizure is unconstitutional unless it falls under a well-delineated, specifically established exception to the Warrant Clause of the Fourth Amendment. *People v. Kluhsman,* 980 P.2d 529, 534 (Colo.1999); *People v. Wright,* 804 P.2d 866, 869 (Colo. 1991). The prosecution has the burden of proving that the intrusion was necessary under the circumstances of the case. *Wright,* 804 P.2d at 869. One exception to the Warrant Clause is when exigent circumstances exist, necessitating immediate police action. *People v. Winpigler,* 8 P.3d 439, 443 (Colo. 1999). We have recognized the exigent circumstances exception in three situations: (1) the bona fide "hot pursuit" of a fleeing sus-

---

1. Sergeant Zen testified, "Well, he was unconscious for just a, you know, a few seconds.... As quickly as went down, lost consciousness, it seems like he kind of regained consciousness." (R. at v. III, p. 7.)

pect; (2) the risk of immediate destruction of evidence; and (3) a colorable claim of an emergency that threatens the life or safety of another. *Id.* at 443–44. The emergency variant requires: (1) an immediate crisis; and (2) the probability that assistance will be helpful. *Id.* at 444; *People v. Amato,* 193 Colo. 57, 60, 562 P.2d 422, 424 (1977).

To determine whether the prosecution has proved that the warrantless entry was justified by the emergency exception, a court must examine the totality of the circumstances as they would have appeared to a "prudent and trained police officer" at the time the decision to conduct the warrantless search is made. *People v. Malczewski,* 744 P.2d 62, 66 (Colo.1987). A search justified by the emergency doctrine is limited by the nature of the emergency; a general exploratory search is not defensible under this exception. *People v. Harper,* 902 P.2d 842, 845 (Colo.1995).

### III. NO IMMEDIATE CRISIS JUSTIFIED THE WARRANTLESS ENTRY

In reviewing a suppression appeal, a trial court's historical findings of fact are entitled to deference by a reviewing court; however, the trial court's application of legal standards to those facts is treated as a question of law and reviewed de novo. *People v. Rivas,* 13 P.3d 315, 320 (Colo.2000). Our independent review of the record shows that the trial court's factual findings as recited above are supported by the record. Therefore, the only issue before us is whether the facts as found by the trial court constitute an emergency, and our review is de novo.

To determine whether an emergency excused the officers' warrantless entry into Defendant's home we must first analyze whether the situation—as it would have been objectively examined by a prudent and trained police officer—presented an immediate crisis. Because we conclude that there was no immediate crisis, we need not determine whether police assistance would have been helpful.

The facts show that the situation was not the kind of immediate crisis that would ne-

cessitate the police officers' warrantless entry into Defendant's home. Defendant, who according to Sergeant Zen was unconscious for only "a few seconds," (R. at.v.III, p. 7), and was immediately "lucid" and "coherent," (R. at v. III, p. 8, 18), entered his residence on his own accord, needing no assistance from police. Moreover, police did not call medical emergency personnel. In fact, Sergeant Zen specifically admitted that he believed such aid was unnecessary. (R. at v. III, p. 18.) In addition, Defendant's wife was with him if it had later become necessary for her to seek emergency medical support for Defendant.

This situation is unlike prior cases where we have found that an emergency justified a police officer's warrantless entry into a private home. Here the police were not responding to an emergency call, *see People v. Amato,* 193 Colo. 57, 58, 60–61, 562 P.2d 422, 423–24 (1977) (holding that police officers' warrantless entry into home and subsequent seizure of items in plain view were justified under emergency doctrine because police were legitimately and reasonably on premises in response to emergency call for a resuscitation unit to treat a possible overdose), a fire, *see People v. Harper,* 902 P.2d 842, 845–46 (Colo.1995) (ruling that police officers' warrantless entry into residence and subsequent seizure of marijuana in plain view were justified under emergency and plain view doctrines because entry by fire and police personnel to extinguish fire is per se constitutionally valid), an apparent burglary, *see People v. Unruh,* 713 P.2d 370, 379 (Colo. 1986) (ruling that "under the emergency exception to the warrant requirement, police officers may enter private property without a warrant where there is a reasonable belief that the premises have been or are being burglarized in order to secure the premises and to search for suspects and victims"), or a plea for help in obtaining a woman's baby from her intoxicated husband who "had broken into her niece's house and had taken 'their baby.' " *See People v. Malczewski,* 744 P.2d 62, 66 (Colo.1987) (holding that police officer's warrantless entry into defendant's home was justified under the emergency variant of the exigent circumstances exception

because officer had reason to believe that an immediate crisis existed with respect to the safety of the baby and that his entry into the apartment would be helpful to alleviate the crisis).

Moreover, in this case, there was no evidence that police were worried that others might be hurt inside Defendant's home, *see People v. Kluhsman,* 980 P.2d 529, 532, 535 (Colo.1999) (ruling that exigent circumstances justified officers' initial warrantless entry into private home for the purpose of searching for injured people because defendant's blood-streaked appearance and statements that "people had been chasing him all night," that "they were trying to kill him," that "he had killed a couple of his pursuers," and that there were people in his home that "had engaged in sexual acts and urinated inside the house" gave rise to a colorable claim that people were in danger or injured), or that explosive devices in Defendant's home might cause harm. *See People v. Higbee,* 802 P.2d 1085, 1087, 1089, 1091 (Colo. 1990) (ruling that emergency situation justified police officers' warrantless entry into defendant's home because reliable informant told police that he had seen toggle in defendant's car, which defendant said would detonate explosives, a search of the car revealed no explosives, and police saw defendant moving items from the car into his home which gave rise to a grave danger to persons in the vicinity of defendant's home should an explosion occur).

Furthermore, the police had no need to discover evidence that would enhance the prospect of administering medical aid to Defendant. *See People v. Wright,* 804 P.2d 866, 869–70 (Colo.1991) (ruling that medical emergency exception will support warrantless search of person's purse or wallet when person found in unconscious or semi-conscious condition and purpose of search is to discover evidence of identity or other information that might "enhance the prospect of administering appropriate medical assistance to the person" but finding exception inapplicable because officer's search of defendant's purse while she was conscious and coherent in the x-ray room at the hospital after a car accident would not be helpful since she was able to disclose information helpful to her treatment or diagnosis). Like the defendant in *Wright,* Defendant was not in an unconscious state when the police entered his home without a warrant; rather, Defendant quickly regained consciousness and entered his residence without police assistance. The officers had no need to enter Defendant's home to garner identifying information to enhance the prospect of administering appropriate aid to Defendant.

In sum, this is not a case where police were responding to an emergency call, fire, or other immediate crisis; rather they were investigating a tip of alleged drug activity at Defendant's residence when he simply passed out for a "few seconds" and immediately regained consciousness outside of his home. The officers did not believe emergency aid was necessary, and they did not call for emergency medical assistance. It was unnecessary for police to follow Defendant into his home when he entered it on his own accord with his wife present.

## IV.  CONCLUSION

We hold that the warrantless entry by police into Defendant's home was not justified by the emergency exception to the warrant clause of the Fourth Amendment or article II, section 7 of the Colorado Constitution. Accordingly, we affirm the trial court's suppression of evidence seized after the warrantless entry. The case is remanded to the trial court for further proceedings consistent with this opinion.

Justice COATS dissents.

Justice COATS, dissenting.

Today the court upholds the suppression of a criminal defendant's confessions (at the scene and later at the police station) to possessing illegal drugs, as well as the drugs themselves and the drug paraphernalia he handed over to the police, in effect dismissing a prosecution for child abuse and illegal possession. It does so not because the defendant's statements or consent were in any way involuntary or taken in violation of his *Miranda* rights, but on the grounds that the police conducted an illegal search by follow-

ing the defendant to his living room chair to ask if he was okay, immediately after he lost consciousness and collapsed in their presence in his doorway. The Fourth Amendment prohibits only unreasonable searches, and the exclusionary remedy exists to deter improper or undesirable police conduct. Because I consider incomprehensible the suggestion that the officers in this case should have remained in the defendant's doorway rather than seeing to his immediate well-being, I feel compelled to register my dissent.

As the majority acknowledges, a well-recognized exception to the requirements of probable cause and a warrant before entering a dwelling exists for emergency assistance. Maj. op. at 1290; *see People v. Amato*, 193 Colo. 57, 562 P.2d 422 (1977)(fire fighters and police officers responding to an emergency call for resuscitation to treat a possible drug overdose could lawfully make warrantless entry into apartment under emergency exception); *see also Root v. Gauper*, 438 F.2d 361 (8th Cir.1971) (police "may enter a dwelling without a warrant to render emergency aid and assistance to a person they reasonably believe to be in distress and in need of that assistance"); *see generally* 3 Wayne R. LaFave, *Search and Seizure* § 6.6(a) (3d ed.1996). While the doctrine has at times been categorized as a variant of the "exigent circumstances" exception, *see* maj. op. at 1289, it is distinct from other kinds of exigent circumstances and has its own separate justification and requirements. *See People v. Harper*, 902 P.2d 842, 845 n. 2 (Colo.1995) (noting recognition of the distinction since first application of the exception in this jurisdiction in *Amato* ). Unlike exigencies in the investigation of crime that make it impossible as a practical matter to secure a warrant from a neutral magistrate, an emergency is an exception not only to the warrant requirement but even to the requirement for probable cause of a crime, being justified as the execution of a duty completely separate and apart from the investigation of crime. *See ABA Standards for Criminal Justice* § 1–2.2 (2d ed.1980) (police have "complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses," including to "aid individuals who are in danger of physical harm," "assist those who cannot care for themselves," and "provide other services on an emergency basis"); *see also* 3 LaFave, *supra* at 390.

It is unquestionably the case that entry pursuant to the emergency exception can be justified only if the circumstances as they would have appeared to a prudent and trained officer at the time of the entry indicated an emergency threatening the life, safety, or in some cases property, of another. *See People v. Malczewski*, 744 P.2d 62, 66 (Colo.1987)(reason to believe there was immediate crisis when mother flagged officer down and told him that father had broken into her niece's house and taken their baby to his apartment). But there was no question in this case that the officers watched the defendant pass out before their eyes. The district court specifically found that "they were justifiably concerned about [the defendant's] medical condition." Similarly, the scope of the emergency exception must be strictly circumscribed by the nature of the emergency justifying the initiation of the warrantless intrusion. *See People v. Wright*, 804 P.2d 866, 870 (Colo.1991)(search of purse for information was not justified by emergency exception where owner was already receiving medical care and was conscious and able to give whatever information was required). But there is no suggestion of a general exploratory search in this case, or any search for that matter, other than merely accompanying the defendant to his living room chair and asking if he was okay.

In fact, the majority's conclusion in this case does not appear to be dictated in any meaningful way by the district court's findings of historical fact. It rests on the majority's own conclusion, as a matter of law, maj. op. at 1290, that the defendant's collapse in the officers' presence did not pose a serious enough threat to his life or safety to amount to an "immediate crisis" that could justify the minimal intrusion of breaking the imaginary plane of the defendant's doorway to see if he needed help. Although the majority ostensibly acknowledges that the lawfulness of the officers' entry depends upon reasonable appearances, from their point of view at the

time of their entry, it actually relies on the fact that it was not necessary, in the end, to call an ambulance and that the defendant's wife turned out to be home and available to help. The fact that a person regains consciousness after collapsing and is able to stand up and make it to a chair a short distance away in no way rules out the danger of a serious malady that could render him unable to act rationally or fend for himself.[1] To have simply turned and walked away, or waited outside to see if the defendant would return, may well have amounted (at least until today) to a dereliction of the officers' duty.

At the very least, the majority holding charges police with correctly assessing the medical cause and seriousness of a blackout and accurately determining whether the danger has passed before entering a home to offer emergency assistance. While dismissal of the relatively minor crimes at issue here may seem insignificant, the majority's rule of decision is one that should send a shudder through anyone who might want and expect similar assistance. To my mind, characterizing the mere entry of the defendant's house under these circumstances as a violation of his constitutional rights and seeking to deter similar behavior in the future stems from a misreading of our Fourth Amendment jurisprudence and will almost certainly have a socially undesirable impact. In light of the trial court's factual finding of justified concern for the defendant's medical condition, I would applaud rather than condemn the officers' conduct in this case. I therefore respectfully dissent.

---

1. The officers testified that the defendant was wobbly and staggered into his residence, and as the district court noted, even according to the defendant's account, he did not recall what happened after he passed out at the front door until he came to in the chair.